

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/07/2016

| | | |
|---|---|---|
| IN RE: | § | |
| **ATP OIL & GAS CORPORATION** | § | **CASE NO: 12-36187** |
| Debtor(s) | § | |
| | § | **CHAPTER  7** |
| | § | |
| **RODNEY  TOW CH 7 TRUSTEE** | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 15-3174** |
| | § | |
| **EXXON MOBIL CORPORATION** | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Exxon Mobil Corporation's motion for summary judgment is denied.  The doctrine of constructive trust is not recognized in Louisiana.  Accordingly, the $764,723.11 payment to Exxon constituted property of the estate.

### Background

ATP Oil & Gas Corporation and Exxon entered into an Offshore Operating Agreement on December 20, 1994, covering the Grand Isle Field off the coast of Louisiana.  (ECF No. 16 at 2-3).  Pursuant to the Operating Agreement, ATP was the operator while Exxon held a non-operating working interest.  Section 8.1 of the Operating Agreement stated that the working interest owners would share in the costs of exploration and operation of the Grand Isle Field.  (ECF No. 17-1 at 15).  The Operating Agreement required ATP to obtain the approval of the other working interest owners before commencing operations estimated to cost more than $100,000.00.  *Id.*  Section 8.3 permitted ATP to request advance payments from the working interest owners for their pro rata share of the estimated cost of operations.  *Id.*  The Operating

Agreement specifically authorized ATP to commingle funds received under the Agreement with its own funds. *Id.*

On October 23, 2007, ATP requested Exxon's approval to perform plugging and abandonment work on two wells on Grand Isle Field Blocks 9 and 10. (ECF No. 16 at 3). ATP estimated the operations would cost $3,600,600.00. *Id.* On October 17, 2008, ATP requested Exxon's approval of additional decommissioning work in the Grand Isle Field. *Id.* at 4. The second request was estimated at $2,677,300.00. *Id.* Exxon approved both requests.

There is no allegation that the amount of funds was fraudulently estimated.

On August 22, 2011, ATP issued two invoices requesting Exxon's pro rata share of the estimated cost of the decommissioning work. *Id.* Exxon issued two checks to ATP on September 16, 2011, and September 21, 2011 totaling $2,486,962.09. (ECF Nos. 17-5 and 17-6). The funds were deposited into ATP's Deposit Account and commingled with ATP's other funds.[1] (ECF No. 18 at 4).

ATP completed the decommissioning work at a lower price than anticipated. After deducting Exxon's share of the actual expenses associated with the Grand Isle Field operations, ATP owed Exxon $764,723.11. (ECF No. 16 at 5). ATP issued Check No. 448356 for the entire amount to Exxon on May 17, 2012. (ECF No. 18-2 at 2).

On August 17, 2012, ATP filed a voluntary chapter 11 for relief. The case was converted to chapter 7 on June 26, 2014, and Rodney Tow was appointed as the chapter 7 Trustee. On June

---

[1] The Operating Agreement contained an Exhibit entitled Accounting Procedure which indicated that ATP would maintain a Joint Account which was defined as "the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties." (ECF No. 17-1 at 46). However, ATP apparently relied on Section 8.4 of the Operating Agreement which authorized it to commingle funds and did not maintain a Joint Account. The funds received from Exxon were placed in an account with other funds held by ATP. (ECF No. 18-2 at 3).

23, 2015, Tow commenced this adversary proceeding seeking to recover the $764,723.11 payment to Exxon as a preferential transfer pursuant to 11 U.S.C. §§ 547.  (ECF No. 1).

Exxon filed a motion for summary judgment on December 10, 2015.  (ECF No. 16).  It argues that the overpayment was held by ATP in a constructive trust for the benefit of Exxon, meaning the transfer is not avoidable under the Bankruptcy Code.  Tow filed a response on January 11, 2016, arguing that Louisiana law does not recognize constructive trusts, and further that Exxon failed to adequately trace the funds.  (ECF No. 18).  At a hearing held on February 1, 2016, the Court requested additional briefing on the issue of tracing.  Following receipt of the briefs, the Court held a second hearing on April 11, 2016, and applied the lowest intermediate balance test, finding that Exxon had sufficiently satisfied its tracing burden.  Accordingly, the Court will now consider the sole remaining issue on summary judgment: whether Louisiana law recognizes the concept of a constructive trust.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.   A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).  Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.  *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Celotex Corp. v. Cattrett*, 477 U.S.

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

317, 326 (1986).   Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.  If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Celotex*, 477 U.S. at 325.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Id.* at 324.  The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Jurisdiction and Authority

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.  This proceeding has been referred to the Bankruptcy Court by General Order 2005–06.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

Although jurisdiction is proper in this Court, an Article I court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts.  *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).  The Court may, however, exercise authority over essential bankruptcy matters under the "public rights exception."  Actions to recover preferential transfers under § 547 fall within the Bankruptcy Court's constitutional authority.  *West v.*

*Freedom Medical, Inc. (In re Apex Long Term Acute Care–Katy, L.P.),* 465 B.R. 452 (Bankr. S.D. Tex. 2011).   Preferential transfer actions both stem from the bankruptcy itself and are decided primarily pursuant to *in rem* jurisdiction.   The right to recover preferential transfers is established by the Bankruptcy Code, and preferential transfer actions are fundamental to the bankruptcy scheme.   *Id.* at 463.   Furthermore, both parties have consented for this Court to hear and determine this matter.   *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015) ("We hold that Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge").

## Analysis

11 U.S.C. § 547(b) allows the trustee a transfer of an interest of the debtor in property (1) to or for the benefit of a creditor; (2) on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within 90 days before the petition date (one year for insiders); (5) which enables the creditor to receive more than such creditor would receive in a chapter 7 or if the transfer had not been made.   For the purposes of this summary judgment motion, Exxon challenges only that the transfer was not a "transfer of an interest of the debtor in property."

Under § 541(d) of the Bankruptcy Code, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent* of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."   11 U.S.C. § 541(d).   The Fifth Circuit has "consistently recognized that § 541(d) accords the beneficiary of a constructive trust, properly imposed under state law, the right to

recover the trust property from the bankruptcy trustee or the debtor.[3]"   *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 436 (5th Cir. 1985).   As property subject to a constructive trust is excluded from the bankruptcy estate, it cannot be recovered through a § 547(b) action.   *See Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1117 (5th Cir. 1995).

State law controls whether a constructive trust has been established.   *Id.* at 1118.   The Louisiana Supreme Court has not explicitly ruled on whether Louisiana recognizes the concept of a constructive trust.   In the absence of guidance from the Louisiana Supreme Court, the Court must make an *Erie* guess and determine, to the best of its ability, how the Louisiana Supreme Court would rule if confronted by the issue.   *Howe ex rel. Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 627 (5th Cir. 2000).   When making an *Erie* guess, the Court looks to: (1) lower state court decisions and Supreme Court dicta, (2) the general rule on the issue, (3) the rule in other states looked to by Louisiana courts when they formulate the substantive law of Louisiana, and (4) other available legal sources, such as treatises and law review commentaries.   *See Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir. 1986).

Lower appellate courts in Louisiana have been generally hostile to the concept of a constructive trust.   *See, e.g.*, *Succession of Gaston v. Koontz*, 49 So.3d 1054, 1058 (La. App. 2010) ("While many other states recognize constructive trusts, Louisiana does not."); *Schewegmann v. Swchewgmann*, 441 So.2d 316, 322-23 (La. App. 1983) ("[I]t is clear the Louisiana Civil Code prohibits the imposition of a constructive trust on property."); *Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 486 So.2d 129, 135 (La. App. 1986) ("While the constructive trust theory has appeal as a means to chastise an unfaithful fiduciary, *it is anathema*

---

[3] A constructive trust, generally, "arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."  Restatement (Second) of Trusts § 73 (1959).

to civilian notions of ownership, a precept unsupported by the Civil Code.") (emphasis added), rev'd on other grounds *Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987).

Furthermore, the Fifth Circuit has consistently held that the equitable concept of a constructive trust does not have a place in Louisiana civil law.  In *In re Oxford Management, Inc.*, the Fifth Circuit plainly stated "Louisiana does not recognize constructive trusts."  4 F.3d 1329, 1336 (5th Cir. 1993) (citing *Sandoz v. Bennett (In re Emerald Oil Co.)*, 807 F.2d 1234 (5th Cir. 1987)).  *See also Marple v. Kurzweg*, 902 F.2d 397, 399 (5th Cir. 1990) ("Indeed, the 'constructive trust' is not recognized in Louisiana.").  Federal district courts in Louisiana have also consistently refused to impose constructive trusts.  *See, e.g.*, *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 707 (W.D. La. 2014) ("[I]t is clear that constructive trusts are not recognized under Louisiana law."); *Bruneau v. FDIC*, 785 F. Supp. 585, 588 (E.D. La. 1992).

Exxon argues that "a number of cases" have recognized constructive trusts under Louisiana law, but relies chiefly on *Boyd v. Martin Exploration Co.*, a case from the Eastern District of Louisiana.  56 B.R. 776 (E.D. La. 1986).  In *Boyd*, the court imposed a constructive trust pursuant to Louisiana law where MECO had failed to record certain assignments of interests in oil and gas leases in favor of its employees.  *Id.* at 778.  The court found that MECO held the interests in a constructive trust with the employees as beneficiaries.  *Id.* at 780.  In so holding, the court explicitly declined to follow *Schwegmann*, relying instead on a Louisiana Fourth Circuit Court of Appeals case which held that legal title to property purchased by an individual partner rested with the individual, but equitable title was held by the partnership. *Decatur-St. Louis Combined Equity Properties, Inc. Venture v. Abercrombie*, 411 So.2d 677, 680 (La. Ct. App. 1982).

While *Decatur-St. Louis* may have opened the door to the concept of constructive trust in the partnership context, the Louisiana Fourth Circuit clarified in *Plaquemines Parish* that *Decatur-St. Louis* should be limited exclusively to actions involving partnerships.[4]  *Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 486 So.2d 129, 136 (La. App. 1986); *rev'd* on other grounds *Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987).  A later federal district court case in Louisiana analyzing *Boyd* concluded that *Boyd's* reading of *Decatur-St. Louis* was "misguided" and "[t]here is no longer support for the general theory of 'constructive trust' in Louisiana."  *Wilson v. Bigger (In re Latham Exploration Co.)*, 83 B.R. 423, 427 (W.D. La. 1988).

Although a majority of states—and the Restatement of Trusts—have adopted the concept of constructive trust, a constructive trust is a common-law remedy in equity.  *XL/Datacomp, Inc. v. Wilson (In re Omegas Grp., Inc.)*, 16 F.3d 1443, 1448 (6th Cir. 1994).  "The concept of equity as provided by . . . the Louisiana Civil Code is not interchangeable with the concept of equity in common law jurisdictions.  While we have no doubt imported some legal principles from the equity of common law jurisdictions as substantive law, we do not follow the peculiar procedural or adjectival concepts which go with that system known as equity in those states."  *Bonneau v. Block*, 484 So.2d 275, 276 (La. Ct. App. 1986).  In a civil law jurisdiction, the legislative will, as expressed in the articles of the Code, is supreme and case law is of secondary importance.  *Laubie v. Sonesta Int'l Corp.*, 752 F.2d 165, 167 (5th Cir. 1985).  The Louisiana Trust Code is silent as to constructive trusts.  *See* La. Stat. § 9:1722, Comments—1964 ("This Code does not treat constructive trusts and does not affect the Louisiana jurisprudence on constructive trusts.").  Given the lack of support for constructive trusts in both the Louisiana Civil Code and relevant

---

[4] The *Plaquemines* court went on to state that *Decatur-St. Louis* "unwittingly perpetuated" the constructive trust theory in Louisiana but that any discussion of constructive trust was dicta.  486 So.2d at 136.

case law, the Court concludes that the Louisiana Supreme Court would not recognize constructive trusts if confronted by the issue.

Accordingly, Exxon's motion for summary judgment is denied.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **June 6, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE